Hello? Martorell, sorry. You know they are. Good morning and may it please the court. Eduardo Martorell on behalf of plaintiff and appellant Metricolor LLC and your honors. This appeal is about deciding whether a series of technological errors made by an elderly man should allow a conglomerate like L'Oreal to tilt the case on its head, spending millions of dollars on New York attorneys, tasked with relentlessly attacking one man in a California lawsuit. This appeal is about deciding whether a 75-year-old man who made technological errors, when placed in context, are the proverbial mole hills that skilled New York attorneys turned into mountains, where case law demonstrates that when placed into this context, in the appropriate context, it constitutes reversible error to have had dismissed this case, due to the policies. Okay. So counsel, I'm not, I'm not, I'm going to try and not be difficult here, but proverbial mole hills. Yes. I would like to know what you're saying is a mole hill. Are you saying fabrication of at least four emails, intentional fabrication and deletion of at least 5,000, if not up to 50,000 documents is a mole hill as opposed to a mountain? Your Honor, when placed in context, we're talking about a 10 to $30 million trade secret case. Well, and I don't want to cut you off. You said placed in context. Help me understand any context that allows fabrication, intentional fabrication. He cut out the email. I mean, how did he think he wasn't going to get caught is another question. He cuts out the emails and manipulates them. I mean, in context, I don't understand it. It's fabrication of evidence. Your Honor. And that's, you don't deny it, right? No, no. I do deny that it's fabrication. I do. So, and that's a jury question. It's something that a jury should decide. Wait, back up. I'm very interested in how you're going to tell me that that's not fabrication when you chop up an email and tape over new portions of an email. Tell me how that's not fabrication. The obviousness of the wrongdoing, if you're going to view it as wrongdoing, shows that it wasn't intentional. It's so outlandish that why would anyone believe that this was intentional? So, number one, we never tried to use it. That's an indication. But wasn't a key fact whether or not samples had been provided to L'Oreal? That was like a key fact, right? It was, no, samples being provided to L'Oreal is not in dispute. Which particular sample? Right, of the Generation 1 product. Samples of the Generation 1 product being provided was a key fact. Yes. And that's what this email, if believed, would have established. No, it would have established that 10 samples were provided, but that was not really in dispute. The prototype was definitely shown to them live at L'Oreal's New York headquarters. That is not in dispute. So whether, I see what you're saying, whether samples were provided on top of that is, from my perspective, not a key fact. It would help, but that email was never used. We never even went there because it wasn't necessary. The district court said the only evidence that you even have are the fabricated emails. No, that is. That is what the district court said. I mean, largely, so I don't want to overstate it. I mean, maybe there was some other shred of evidence, but of the small evidence that you even had on the merits to make this case, he said the majority of it were these fabricated emails. And now you're saying, well, I mean, you're in catch 22, because either that's true that you had some evidence and it was fabricated, or now you seem to say, well, the fabrication, the fabricated evidence wasn't even relevant. So then we fall back to the alternative, which is you had no evidence at all. No, and that's the point. No, no, no. There's tens of thousands of documents that came from L'Oreal themselves. There's emails collaborating the meetings. There's emails collaborating what was discussed at the meetings. There's emails collaborating what they want to discuss on phone calls. This was a series of negotiations over 18 months, and that's why we're focused on the two policies of, number one, deciding cases on their merits, and, number two, a less severe sanction. Doesn't the system for deciding cases on the merits kind of turn on the notion that people don't make stuff up and then produce it as documents? That is where I believe a jury would come into play and decide whether or not these were fabrications or whether or not these were mistakes, and that is the key difference. Why would that be for the jury? That seems like a gatekeeper judge question to me. So as far as gatekeeping the evidence, I agree with you. So if the judge imposed a very harsh sanction, let's call it six-figure monetary and not allowing us to use any affirmative evidence, none, just L'Oreal's, just what is – You would be okay with that? I would be okay with that. That's crazy. You would be okay with having your client ultimately have to pay $100,000 in sanctions and then lose the case. You'd rather have that option than just have a dismissal? Well, holding that amount in abeyance in terms of, again, the context of a $10 million to $30 million dispute where – You're not going to – you have no – the district court said you have no evidence that's going to get you anywhere in this case. That's incorrect. There's tens of thousands of pages of documents. But here's what I don't understand. So it sounds like you agree that conduct occurred that would be potentially sanctionable. You're not pushing too hard back against that, and you're saying, in fact, it should have been some sanction other than terminating sanctions. So if that conduct occurred, then isn't the scope of the remedy – isn't that an abuse of discretion standard? And are you really saying that it wouldn't have been an abuse of discretion to fine my client $100,000, but terminating sanctions, that's an abuse of discretion? Yes, that's correct. So there's less severe sanctions that are available prohibiting us from using any affirmative evidence. Now, I would like to qualify that with things that are beyond reasonable dispute, like audio recordings of the meetings that my client possesses. But anything that's even close to inauthentic that can be argued to be inauthentic, just throw it out and allow us to go to – in front of a jury with just their evidence, with just their executives saying, hey, we like this trade secret. We see it as valuable. We're going to have to pay for it. Or, you know what, let's just go ahead and make our own. That is a $10 million to $30 million problem that L'Oreal basically got away with by attacking and blaming the victim who, we concede, made mistakes. We don't view them as fabrications. Stop sugarcoating it. Made mistakes. He chopped up an email and fabricated it. Don't sugarcoat that. We never used it, Your Honor. It's not – it's – OK. Well, there's – number one, we never used it. You turned over the email, right? You turned over a fabricated email. We turned over the email. That's evidence that you thought it was relevant. Your Honor, when – He manipulated the case. When you're dealing with thousands of records, it is – No, it is not normal to fabricate an email. I've done tons of discovery. I've never had a client that has come to me with a fabricated email and turned it over and then made the arguments that you're making right now. I mean it's just ingenuous. But anyway, all right, let's move on. The last thing I'll say, Your Honor, is that this was so obvious in that we turned over native emails and there were only four missing and one of them was this one. So if this was intentional, it's – But you started out by saying this is a 75-year-old man who was not technologically sophisticated. I mean you're right. There was very little likelihood he was going to get away with it, but did he know that? Your Honor, I will – we don't believe it was intentional and we're saying it was a mistake and that there should be less severe – Do you want to reserve for rebuttal? That's what I'm going to do, Your Honor. Thank you. I'm going to reserve some time for rebuttal. Thank you very much. Good morning, Your Honors. Excuse me. Naomi Scotten for L'Oreal. I'll be brief this morning, just a few issues, mostly error correction. First, it is absolutely in dispute that a first-generation prototype was shared with L'Oreal. Not only was it not shared, it doesn't exist. It was fabricated for purposes of this litigation. And wasn't that the ten samples that were referred to in that email? Was it ten samples of the first-generation product? So the email does not – in the fake email. Right, yes. Yes, it mentions samples of the first-generation product. I believe it references two different types of orifice reducer.  The self-sealing, which is a patented product that existed, and then the standard orifice. Alleged trade secret, yes. Right, which did not exist. And it was – the email, as fabricated, was saying that samples of the latter, the trade secret product, had been provided. Am I wrong about that? No, that's exactly right. Okay. Beyond that, the audio recordings – there are audio recordings of meetings with L'Oreal, as far as I know, but they do not reflect any first-generation trade secret. The fact that there is a recording of a meeting doesn't mean that some trade secret existed. After that, it's not a jury issue whether documents were fabricated. If it was a jury issue, then there could never be exfoliating sanctions or terminating sanctions or anything and everything would go to the jury. But a trial is a search for truth. There is no truth. We didn't get into the – we focused on the fabrication, which you would think would be enough, but that's not all we have here. We also have 5,000 deleted or 50,000. Can you shed some light on that? Yes, Your Honor. Is that actually – that's a other basis for sanctions here, is that right? Absolutely. There are three separate exfoliation-related issues that led to sanctions here, kind of four. First, there are the fabrications. We've covered that. Next, there were deletions and withholdings that came to light with the Cohen image. The deletions and withholdings include documents that, in Metricola's own words, where they contemplated sending L'Oreal, and I quote, total bullshit and a lie, but they cannot prove we did not do it. And also an email where they specifically reflected that they had sent L'Oreal and made up survey data. That's in addition to a host of emails demonstrating that the first-generation trade secret was never presented to L'Oreal. Only the second-generation trade secret was. Did you get any sanctions on top of dismissal? We did not seek attorney's fees. Okay. So you were generous and kind. So what I'm confused about is it seems like you brought this to the district court's attention and some non-terminating sanctions were entered, and then was it the addition of the email deletions? Or what caused it to go from non-terminating sanctions on the first pass to all of a sudden it became terminating sanctions? If you look at 1 ER 40 to 41 in the sanctions opinion, the district court lists six different things that changed its mind. It started with misrepresentations by Metricolor about specifically what had occurred with the fabricated documents. As just one example, there were fabricated survey results. The Metricolor represented that while I think a date may have been added and a header may have been added, these survey results were in fact presented to L'Oreal. And then the documents recovered from the Cohen image demonstrated that, in fact, they were made-up survey results. So it's all sort of part of the same scheme where Metricolor is – Are you shocked by that? I've never seen anything like this in about 15 years of practice. I've never seen anything like it. I think that's pretty much what the district court said, too. Yeah, I think the district court was doing everything it possibly could to keep this going. Can you – I mean, the best argument that they have is that something less than termination – and we do have case law that says you have to consider things less than termination. Why – can you explain why a $100,000 sanction and not terminating LIMGO to the trial would not have been enough here? Yes, Your Honor. L'Oreal is in the position of trying to prove the absence of a thing. It's trying to prove the absence of a first-generation trade secret. And to do that, it needs access to Metricolor's document production, not to L'Oreal's. It just needs to be able to say, here's the universe of things. This thing didn't exist. And because he deleted them all, you can't get that. We cannot. So even though the fabrication, bad as it is, that's really not the basis. You theoretically could have had an alternative sanction for that, but it's really the $5,000 – and maybe you can tell me how many. There was some dispute about whether it was $5,000 or $50,000. I'm not sure it matters. But that's really the basis for the dismissal. Yes, Your Honor. So it's both the deletions, the fabrications, and also just Metricolor's conduct generally in this case. It's the three things together. So the permanent deletions were a huge issue because L'Oreal couldn't get at those documents, though they're presumably bad for Metricolor since the other things it was deleting and withholding were terrible for it. But beyond that, the court also said that it didn't know what else was fabricated in the case. The initial forensic review of the fabricated documents only looked at the 14 documents that L'Oreal was able to specifically identify through other discovery issues were probably fake. And then they identified, I think, five, including the handwritten notes that were fabricated. But beyond that, we have no idea what else in the production was altered. So even putting the deletions aside, the fabrications are a huge issue. And then beyond all that, the court specifically considered lesser sanctions and said that in addition to those issues with the corruption of the record, it did not think lesser sanctions would sufficiently deter Metricolor's future misconduct. Was there anything in the record that suggested that the council was aware of what was going on? I don't want to go after my counsel for Metricolor in this case, and I'm not sure who is saying what to whom. There are certainly issues. For example, there's a document called MC 613 in this case, where on October 15, 2021, Sal accessed the document. And in that document, he found notes that specifically told him, I sent this, I had cut and pasted and copied or something. That's the document we've been talking about with the scissors and the tape. So he knew by then. But 11 days later, Metricolor represented to the court that Sal didn't remember whether he had sent it or not. So there are issues like this that create some issues in the record. But the district court, you never moved for sanctions against opposing counsel. The district court didn't entertain that. You're not asking us to do anything. No, Your Honor. Thank you. Thank you, Your Honor. Your Honors, I first want to address that the biggest issue for us is what I think Justice Nelson noted is our best argument. Thank you for the promotion. I'm only a judge. But that are what whether there was a less drastic remedy to the situation. And there is no evidence here that the court considered prohibiting Metricolor from using affirmative evidence at trial. And the problem is counsel. I mean, look, what was done was bad enough here. I mean, I think you got to take a good hard look about whether you should have even appealed this. I mean, you're in a danger zone that we don't remand this and ask the district court instructed to look at your own conduct. I mean, you've taken a huge personal risk here. You need to be careful. OK, but setting that aside, the bigger question is the 5000 to 50000 documents that were deleted. I mean, how can you go and prove a case when you don't even all the documents were deleted? Well, your honor, we have our forensic expert found and and we've argued that 50000 documents were not deleted. OK, say it's 5000. Let's give you the benefit of the doubt. I don't know how that helps you. Well, we can test all that, your honor. But OK. Your honor, the last thing I'll say is that it's a hundred eight year history. L'Oreal had never implemented a catheter syringe to extract and dispense product and that this product made the application of color measurable, replicable and sleek. And L'Oreal's own evidence, including emails between its own executives, demonstrated that the parties met in person on multiple occasions, that the meetings were multiple and repeated over the course of 18 months, that they liked the product and that they wanted to use it and that they signed a nondisclosure agreement. So, your honor, the last thing I'll say is L'Oreal has now evaded a case that's estimated to be worth between 10 and 30 million based on. Mistakes that can be remedied by prohibiting us from using that. All right. Yeah. Thank you. Thank you for your time. The case is now submitted.
judges: NELSON, VANDYKE, Cole